FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA ANDREA GONZALEZ,<br><br>Defendant. | No.  1:18-cr-02005-SAB<br><br>**ORDER RE: PRETRIAL MOTIONS** |

On January 9, 2019, the Court held a pretrial conference in the above-captioned matter. Troy Lee and Tim Nguyen appeared on behalf of Defendant, who was present in the courtroom, and Ian Garriques appeared on behalf of the Government.

At the hearing, the Court ruled from the bench and denied Defendant's Motion to Dismiss, ECF No. 91. The Court took Defendant's Motion to Suppress Evidence, ECF No. 92, under advisement. After careful consideration of the parties' briefing and oral argument, the Court **denies** Defendant's Motion to Suppress.

### FACTUAL BACKGROUND[1]

Yakima Police Department Detective Drew Shaw had been trying to locate Maria Gonzalez since June 2017. Detective Shaw wanted to question Ms. Gonzalez about her involvement in a local murder. Ms. Gonzalez had at the time

---

[1] The parties stipulate that the facts of this case are found in the Yakima Police Department Report for Incident 17Y051546 found at ECF No. 92-1, and Detective Shaw's oral testimony at the pretrial conference.

ORDER RE: PRETRIAL MOTIONS ^ 1

an outstanding felony warrant for possession of a controlled substance, methamphetamine. ECF No. 101-1. Detective Shaw sought to arrest Ms. Gonzalez pursuant to the active warrant, and use it as an opportunity to speak with her about the murder.

On November 21, 2017, Detective Shaw received a phone call from ATF Special Agent Alconaba informing him that Ms. Gonzalez was in Yakima, Washington, and was likely staying at a local motel referred to as the "Economy." Detective Shaw was familiar with two motels in Yakima with the words "Economy" and "Econo" in their name. Detective Shaw spent some time surveilling both locations.

At approximately 1355 hours, Detective Shaw turned into the parking lot at the Economy Inn at 1405 North First Street in Yakima. According to Detective Shaw, North First Street in Yakima is known as a "hub" for criminal activity. When Detective Shaw pulled into the Economy Inn, he immediately focused on a blue Nissan Versa parked near the front door of the motel. Detective Shaw observed a woman sitting in the driver's seat. He suspected this to be Maria Gonzalez. Detective Shaw observed the woman exit the vehicle and approach the motel lobby. She was carrying a large beige purse on her shoulder.

Detective Shaw wanted to confirm the woman's identity before she entered the motel lobby. He approached the woman as she reached the door at the entrance. Detective Shaw observed the woman struggling to open the lobby door with an access card. Detective Shaw noticed her hands shaking uncontrollably. When Detective Shaw got close enough, he recognized the woman as Maria Gonzalez and told her that it was time for her to go to jail. Ms. Gonzalez continued to try and gain entry into the motel lobby.

Detective Shaw grabbed Ms. Gonzalez's arms, told her she was under arrest, and ordered that she place her hands behind her back. Ms. Gonzalez immediately tensed up and began resisting arrest. Detective Shaw struggled to place Ms.

ORDER RE: PRETRIAL MOTIONS ^ 2

Gonzalez's hands behind her back and she continued to attempt to pull away. Detective Shaw eventually pushed Ms. Gonzalez over a large flower pot in order to gain control.

During the struggle, Ms. Gonzalez's purse fell off of her shoulder and hit the ground next to her feet. Ms. Gonzalez immediately blurted out, "that's not my purse." As Detective Shaw continued to struggle gaining control over Ms. Gonzalez, she stated something to the effect of, "I'm going to piss my pants." Detective Shaw pushed her down to her knees, at which point he observed a puddle of liquid accumulate under her knees which appeared to be urine.

After finally gaining control of her hands, Detective Shaw removed his handcuffs and placed one cuff on Ms. Gonzalez's right hand, but her left hand broke free from Detective Shaw's grasp and appeared to be reaching for her purse. Detective Shaw was able to regain control and handcuff both of Ms. Gonzalez's hands.

After properly securing Ms. Gonzalez in handcuffs, Detective Shaw proceeded to call for assistance. Officer Schershligt, Detective Cays, and Detective Pepper arrived approximately thirty seconds to a minute after Detective Shaw placed the call. Officer Schershligt proceeded to take custody of Ms. Gonzalez and placed her in the back of his patrol car. The purse remained in Detective Shaw's control, approximately twenty feet away from Officer Schershligt's patrol car.

Detective Shaw proceeded to search the purse in the presence of Detective Cays and Detective Pepper, while Ms. Gonzalez was handcuffed in the back of Officer Schershligt's patrol car. Detective Shaw found several different controlled substances and a loaded firearm. Ms. Gonzalez was transported to the Yakima County jail and booked on two counts of possession of a controlled substance with intent to deliver, unlawful possession of a firearm, and the outstanding felony

ORDER RE: PRETRIAL MOTIONS ^ 3

warrant. At some point after her arrest and incarceration, Ms. Gonzalez posted bond and was released pending trial on her state charges.

## PROCEDURAL HISTORY

### Initial Indictment

On January 18, 2018, the Grand Jury returned a Sealed Indictment charging Ms. Gonzalez with (1) Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine; (2) Possession of a Firearm in Furtherance of Drug Trafficking Crime; and (3) Felon in Possession of Firearm and Ammunition. ECF No. 1.

On January 22, 2018, federal law enforcement arrested Ms. Gonzalez pursuant to the Sealed Indictment as she was leaving the Yakima County Superior Court. During her arrest, law enforcement officers found Ms. Gonzalez in possession of methamphetamine and heroin. Magistrate Judge Dimke appointed CJA attorney Michael Lynch to represent Ms. Gonzalez in this matter.

### Superseding Indictment

On March 13, 2018, the Grand Jury returned a Superseding Indictment charging Ms. Gonzalez with (1) Possession with Intent to Distribute 50 Grams or More of Actual Methamphetamine; (2) Possession with Intent to Distribute 100 Grams or More of a Mixture and Substance Containing a Detectible Amount of Heroin; (3) Possession of a Firearm in Furtherance of Drug Trafficking Crime; (4) Felon in Possession of Firearm and Ammunition; (5) Possession with Intent to Distribute 5 Grams or More of Actual Methamphetamine; and (6) Possession with Intent to Distribute a Mixture and Substance Containing a Detectible Amount of Heroin. ECF No. 38. The Superseding Indictment included new charges related to the drugs found in Ms. Gonzalez's possession when she was arrested by federal law enforcement on January 22, 2018.

//
//

ORDER RE: PRETRIAL MOTIONS ^ 4

### First Motion to Continue

The Court held a pretrial conference on March 21, 2018, Michael Lynch appeared on behalf of Ms. Gonzalez, who was present in the courtroom, and Ian Garriques appeared on behalf of the Government. Mr. Lynch requested additional time to investigate and prepare for trial. The Government agreed that the circumstances of this case warranted a continuance. Ms. Gonzalez orally objected to her attorney's request.

The Court granted Mr. Lynch's request for a continuance pursuant to 18 U.S.C. § 3161(h)(7)(A) and (h)(7)(B)(iv), finding that the ends of justice were served by granting the continuance, and that a failure to grant a continuance would deny counsel for Ms. Gonzalez reasonable time necessary for effective preparation. ECF No. 57.

### New Counsel

On March 26, 2018, Mr. Lynch filed an ex parte Motion to Withdraw as Counsel for Defendant, ECF No. 59. On March 28, 2018, the Court granted Mr. Lynch's request to withdraw, finding the attorney-client relationship between Mr. Lunch and Ms. Gonzalez was irretrievably broken. ECF No. 63. The Court referred the matter to Judge Dimke for appointment of new counsel.

On April 2, 2018, Judge Dimke appointed Troy Lee and Tim Nguyen to represent Ms. Gonzalez in this matter.

### Second Superseding Indictment

On April 10, 2018, the Grand Jury returned a Second Superseding Indictment. ECF No. 66. The Second Superseding Indictment amended the quantity of methamphetamine in Count 5.

### Second Motion to Continue

On May 21, 2018, Mr. Lee and Mr. Nguyen filed a Motion to Continue Trial and Pretrial Dates, ECF No. 77. On May 23, 2018, the Court held a pretrial conference and addressed the motion to continue. Troy Lee and Tim Nguyen

appeared on behalf of Ms. Gonzalez, who was present in the courtroom, and Ian Garriques appeared on behalf of the Government. Mr. Lee and Mr. Nguyen, who had recently been appointed, requested additional time to review discovery and prepare an adequate defense on behalf of Ms. Gonzalez. The Government agreed with defense counsel that the circumstances of the case warranted a continuance. Ms. Gonzalez, again, objected to her attorneys' request.

The Court granted the motion to continue pursuant to 18 U.S.C. § 3161(h)(7)(A) and (h)(7)(B)(iv), finding that the ends of justice were served by granting the continuance, and that a failure to grant a continuance would deny counsel for Ms. Gonzalez reasonable time necessary for effective preparation. ECF No. 81.

**Third Motion to Continue**

On July 17, 2018, Mr. Lee and Mr. Nguyen filed another Motion to Continue Trial and Pretrial Dates, ECF No. 82. On July 18, 2018, the Court held a pretrial conference and addressed the motion to continue. Troy Lee and Tim Nguyen appeared on behalf of Ms. Gonzalez, who was present in the courtroom, and Ian Garriques appeared on behalf of the Government. Ms. Gonzalez had recently been indicted on new federal criminal charges (No. 1:18-CR-02039-SAB-1), and Mr. Lee and Mr. Nguyen requested additional time to discuss these new allegations with Stephen Hormel, who is representing Ms. Gonzalez in the separate case. Ms. Gonzalez, again, objected to her attorneys' request for a continuance.

The Court granted the motion to continue pursuant to 18 U.S.C. § 3161(h)(7)(A) and (h)(7)(B)(iv), finding that the ends of justice were served by granting the continuance, and that a failure to grant a continuance would deny counsel for Ms. Gonzalez reasonable time necessary for effective preparation. ECF No. 84.

//

**Fourth Motion to Continue**

On November 2, 2018, Mr. Lee and Mr. Nguyen filed another Motion to Continue Trial and Pretrial Dates, ECF No. 60. On November 7, 2018, the Court held a pretrial conference and addressed the motion to continue. Troy Lee and Tim Nguyen appeared on behalf of Ms. Gonzalez, who was present in the courtroom, and Ian Garriques appeared on behalf of the Government. Mr. Lee and Mr. Nguyen advised the Court that they needed additional time to prepare for trial, given the status of Ms. Gonzalez's new criminal charges. Additionally, Mr. Lee and Mr. Nguyen wanted more time to file pretrial motions. The Government did not object to the requested continuance.

Ms. Gonzalez, on the other hand, objected to her attorneys' request. Ms. Gonzalez informed the Court that she did not believe her attorneys need any more time to prepare for trial.

The Court granted the motion to continue pursuant to 18 U.S.C. § 3161(h)(7)(A) and (h)(7)(B)(iv), finding that the ends of justice were served by granting the continuance, and that a failure to grant a continuance would deny counsel for Ms. Gonzalez reasonable time necessary for effective preparation. ECF No. 90.

On December 7, 2018, Ms. Gonzalez filed a Motion to Dismiss, ECF No. 91, and Motion to Suppress Evidence, ECF No. 92.

**DISCUSSION**

**I. Motion to Dismiss**

Ms. Gonzalez argues that the indictment in this case should be dismissed because her Sixth Amendment right to speedy trial was violated.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy … trial …." *Doggett v. U.S.*, 505 U.S. 647, 651 (1992). The Speedy Trial Act "was enacted in part out of the dissatisfaction with sixth amendment speedy trial jurisprudence, and put more life

into defendants' speedy trial rights." *U.S. v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982). As a result, the Ninth Circuit has recognized that "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." *Id.*; *see also U.S. v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995) ("Speedy Trial Act affords greater protection to a defendant's right to a speedy trial than is guaranteed by the Sixth Amendment, and therefore a trial which complies with the Act raises a strong presumption of compliance with the Constitution.").

In *Barker v. Wingo*, the Supreme Court established the balancing test used to determine whether a defendant's Sixth Amendment right to speedy trial has been violated. 407 U.S. 514, 530-33 (1972). The factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice resulting from the delay. *Id*.

**(1) Length of Delay**

There are two components to the first *Barker* factor. First, simply to trigger a speedy trial analysis, the defendant must show that the period of time between indictment and trial passes a threshold point of "presumptively prejudicial" delay. *Doggett*, 505 U.S. at 651-52 (citing *Barker*, 407 U.S. at 530-31). If this threshold is met, the Court will proceed to the remaining *Barker* factors. *See Doggett*, 505 U.S. at 652.

If the defendant shows a "presumptively prejudicial" delay, then the Court considers "the extent to which the delay exceeds the threshold point in light of the degree of diligence by the government and acquiescence by the defendant to determine whether sufficient prejudice exists to warrant relief." *U.S. v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993).

Courts have generally found delays approaching one year to be "presumptively prejudicial." *Doggett*, 505 U.S. at 652 n.1; *Beamon*, 992 F.2d at 1012-13.

In this case, Ms. Gonzalez was initially indicted on January 18 2018, and her jury trial is currently scheduled for February 4, 2019. This results in a delay of almost thirteen months. The Court finds the length of delay raises a presumption of prejudice and thus warrants a review of the remaining *Barker* factors. (The Court makes this finding very reluctantly because all of the continuance requests were made by defense counsel).

### (2) Reason for Delay

The second factor requires the Court to focus on the reasons behind the delay. The Ninth Circuit has instructed that this is the "focal inquiry" of the *Barker* analysis. *U.S. v. King*, 483 F.3d 969, 976 (9th Cir. 2007).

Ms. Gonzalez focuses exclusively on the actions of her initial attorney, Michael Lynch. Ms. Gonzalez argues that Mr. Lynch's request for a continuance was unreasonable because, according to Mr. Lee and Mr. Nguyen, this is a simple case. "[Ms. Gonzalez's] offense – *albeit* have a potential of serving a minimum of life in prison – are legally simple and should not have required more time as requested by her previous attorney as discovery should have been completed before the initial trial date." Defendant's Motion to Dismiss at 7.

The Government argues that any delay in Ms. Gonzalez's case is not attributable to the Government; the blame rests solely on the actions of Ms. Gonzalez and her counsel. More Specifically, the Government asserts the delay was caused by Ms. Gonzalez filing pretrial motions, including motions to revisit detention status and motions to continue. Additionally, the Government notes that Ms. Gonzalez was indicted on sexual assault charges that occurred while she was in custody awaiting trial in this case. No. 1:18-CR-2039-SAB-1. These new charges have caused her attorneys to request a continuance on two occasions. *See* ECF Nos. 77, 87.

The Court finds this case has experienced a lengthy delay for reasons that are not attributable to the Government. Moreover, the Court notes that most of the

ORDER RE: PRETRIAL MOTIONS ^ 9

periods of delay is properly excludable under the Speedy Trial Act, 18 U.S.C. § 3161. For example, all periods of delay during which pretrial motions were pending are automatically excludable from the speedy trial calculation, 18 U.S.C. § 3161(h)(1)(D); and all periods of delay based on the Court's "ends of justice" findings are also excludable from the speedy trial computation, 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(iv).

### (3) Defendant's Assertion of the Right

A defendant's assertion of her right to speedy trial "is entitled to strong evidentiary weight in determining whether the defendant [was] deprived of the right." *Barker*, 407 U.S. at 531-32. In this case, Ms. Gonzalez repeatedly asserted her right to a speedy trial by orally objecting to a continuance every time one was granted. ECF Nos. 57, 81, 84, 90.

Even repeated assertions of the right to speedy trial, however, must be viewed in light of defendant's other conduct. *U.S. v. Loud Hawk*, 474 U.S. 302, 314 (1986). Here, Ms. Gonzalez engaged in conduct that resulted in new criminal charges, which required her attorney to request a continuance on two occasions. ECF Nos. 77, 87. Thus, this factor weighs only slightly in favor of Ms. Gonzalez.

### (4) Prejudice

"[A]ctual prejudice can be shown in three ways: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired." *Beamon*, 992 F.2d at 1014 (citing *Doggett*, 505 U.S. at 652). The Court finds Ms. Gonzalez has failed to show she has suffered any actual prejudice as a result of the delay.

## CONCLUSION

After reviewing the *Barker* factors, the Court finds Ms. Gonzalez's Sixth Amendment right to speedy trial was not violated. Additionally, there is a "strong presumption" that her right to speedy trial was not violated because there does not appear to be a violation of the Speedy Trial Act. *Baker*, 63 F.3d at 1497.

## II. Motion to Suppress Evidence

Ms. Gonzalez also moves to suppress the evidence found inside of her purse, arguing that it was discovered pursuant to a warrantless search in violation of the Fourth Amendment. The Government contends the evidence should not be suppressed because Detective Shaw conducted a valid search of the purse incident to Ms. Gonzalez's arrest.

### Search Incident to Arrest

The Fourth Amendment protects individuals against unreasonable searches and seizures. *Katz v. U.S.*, 389 U.S. 347, 353 (1967). Warrantless searches are *per se* unreasonable, subject only to a few specific, well-delineated exceptions. *Id*. at 357. These exceptions include, among others, a search incident to a lawful arrest. *U.S. v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

"When making a lawful arrest, police may conduct a warrantless search of the area within the arrestee's immediate control, that is, 'the area from within which [she] might gain possession of a weapon or destructible evidence.'" *U.S. v. Turner*, 926 F.2d 883, 887 (9th Cir. 1991) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). In *Gant*, the Supreme Court explained that the "immediate control" requirement "ensures that the scope of a search incident to arrest is commensurate with its purpose of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy."[2] *Gant*, 556 U.S. at 339.

Additionally, to fall within the exception, a search incident to arrest must be conducted at "about the same time as the arrest." *U.S. v. Andersson*, 813 F.2d

---

[2] The Ninth Circuit has held *Grant*'s holding applies to searches outside the automobile context because "the [Supreme] Court tethered its rational to concerns articulated in *Chimel*, which involved a search of an arrestee's home." *Cook*, 808 F.3d at 1199 n.1.

1450, 1456 (9th Cir. 1987). While "[t]here is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search," *U.S. v. McLaughlin*, 170 F.3d 889, 892 (9th Cir. 1999), the search must be "spatially and temporally incident to the arrest," *U.S. v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014). *See also U.S. v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (interpreting the temporal requirement to mean that the search must be "roughly contemporaneous with the arrest.").

The Government bears the burden of justifying a warrantless search. *U.S. v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991).

Ms. Gonzalez argues that, at the time of its search, the purse was not in her immediate control. More specifically, at the time of the search, Ms. Gonzalez was fully handcuffed and transferred into the custody and control of Officer Schershligt, who placed her in the backseat of his patrol car, approximately twenty feet away from the purse. Given her status at the time of the search, Ms. Gonzalez argues that the two principles for a valid search incident to arrest – officer safety and preservation of evidence – were absent, and thus the exception does not apply. *Gant*, 556 U.S. at 339.

The Government argues the facts and circumstances surrounding Ms. Gonzalez's arrest demonstrate that the search of Ms. Gonzalez's purse was a valid search incident to arrest. First, the Government argues the search was justified because it was conducted for purposes of officer safety. While Detective Shaw was planning on arresting Ms. Gonzalez pursuant to an outstanding felony warrant, he was primarily interested in speaking with her about her potential involvement in a murder. Moreover, Detective Shaw testified that he had received information from the ATF that Ms. Gonzalez had also been involved in a shooting in Spokane.

Additionally, on the date of her arrest, Detective Shaw was looking for Ms. Gonzalez at a motel on North First Street in Yakima, Washington; a place known to the police as a hub for criminal activity.

Detective Shaw also testified that Ms. Gonzalez's conduct prior to and during her arrest also raised concerns for officer safety. For example, as Detective Shaw was walking up to make initial contact with Ms. Gonzalez, he noticed her trying to gain entry into the motel lobby by using a key card. Detective Shaw noticed Ms. Gonzalez's hands were shaking uncontrollably to the point where she could not slide the access card into the key-slot.

During Detective Shaw's struggle to arrest Ms. Gonzalez, the purse fell off her shoulder and hit the floor next to her feet and she blurted out, "that's not my purse." And at some point during the struggle, Ms. Gonzalez broke free from Detective Shaw's control and reached for her purse. This caused Detective Shaw to become extremely concerned for his safety, causing him to escalate his use of force to gain control over Ms. Gonzalez.

Detective Shaw also became concerned over the fact that Ms. Gonzalez urinated on herself. Detective Shaw testified that, in his experience, he finds that people urinate on themselves in two situations: (1) when someone is so intoxicated that they cannot control themselves; or (2) when they are arrested for a very serious crime. There being no facts to suggest intoxication, Detective Shaw concluded Ms. Gonzalez urinated on herself because she knew or assumed she was being arrested for a serious offense.

Finally, Detective Shaw testified that at the time of the arrest or shortly after, a bystander walked by and made a comment to Ms. Gonzalez which suggested that the two were acquainted with one another. This also raised safety concerns for Detective Shaw.

Second, the Government also argues that the search was justified because it was conducted to preserve destructible evidence. Detective Shaw arrested Ms.

Gonzalez pursuant to an outstanding felony warrant issued for unlawful possession of methamphetamine. ECF No. 101-1. Thus, Detective Shaw had reason to believe there may be destructible evidence inside Ms. Gonzalez's purse.

The Court finds that the facts and circumstances surrounding Ms. Gonzalez's arrest demonstrate that Detective Shaw conducted a valid search incident to arrest. Detective Shaw offered numerous, compelling reasons to search the purse on the basis of officer safety. The fact that Ms. Gonzalez was handcuffed at the time of the search is significant, but not dispositive. *Cook*, 808 F.3d at 1200. Moreover, the Court takes note of the fact that Detective Shaw arrested Ms. Gonzalez in an area known for its criminal activity, and that there was at least one bystander in the area who appeared to know Ms. Gonzalez. *See Cook*, 808 F.3d at 1200 (crediting officer safety concerns because at the time of the arrest, "a crowd had gathered nearby, heighten[ing] the agents' reasonable fear that a bystander or additional unidentified co-conspirator might intervene."). Under the totality of the circumstances, the Court finds that the search of Ms. Gonzalez's purse was reasonable and a valid search incident to arrest.

### Inevitable Discovery

Even if the search of Ms. Gonzalez's purse was not a valid search incident to arrest, the evidence found inside the purse remains admissible pursuant to the inevitable discovery doctrine. The inevitable discovery doctrine is an exception to the exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 443-44 (1984). "For the exception to apply, the prosecution must show by a preponderance of the evidence that the contraband or other material seized would have been discovered inevitably by lawful means." *U.S. v Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986) (citing *Nix*, 467 U.S. at 444). The inevitable discovery doctrine applies to evidence that would have been discovered pursuant to an inventory search. *U.S. v. Ruckes*, 586 F.3d 713, 718-19 (9th Cir. 2009).

An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) "[I]t is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in [her] possession, in accordance with established inventory procedures." *Illinois v. Lafayette*, 462 U.S. 640, 648 (1883). "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 586 F.3d at 371-72.

The Government contends that even if Detective Shaw had not searched Ms. Gonzalez's purse following her arrest, its contents would have been discovered inevitably during an inventory search. Detective Shaw testified that generally when an individual possesses a piece of property at the time of her arrest, the property is taken with her to jail at the time of booking. Some jails will not accept large property – like a suitcase or large purse – in which case the property is booked into the Yakima Police Evidence and Property Unit. Detective Shaw testified that it is standard practice and procedure at the Yakima Police Department to search and inventory property before it is booked in to the Evidence and Property Unit for safekeeping.

Ms. Gonzalez does not dispute that, if she was booked, her purse would have been subject to an inventory search. Instead, Ms. Gonzalez argues that, under Washington law, she could have posted bail and avoided the booking process and any corresponding inventory search. Wash. Rev. Code § 10.31.030 provides that when someone is arrested under the authority of a warrant, the arresting officer must provide the arrestee with notice of the charge and the amount of bail set by the warrant. Wash. Rev. Code § 10.31.030; *United States v. Peterson*, 902 F.3d 1016, 1020 (9th Cir. 2018). "[A]ny officer making an arrest under this section shall, if the person arrested wishes to deposit bail, take such person directly and

ORDER RE: PRETRIAL MOTIONS ^ 15

without delay before a judge or before an officer authorized to take the recognizance and justify and approve the bail, including the deposit of a sum of money equal to bail." Wash. Rev. Code § 10.31.030. An inventory search conducted before an arrestee is provided the information required by § 10.31.030 is unlawful. *State v. Smith*, 56 Wash. App. 145, 98 (1989).

In this case, the outstanding felony warrant issued for Ms. Gonzalez's arrest indicates that bail was set at $5,000.00. ECF No. 101-1. Ms. Gonzalez contends that, had she been told about her right to post bail, she would have done so and avoided the booking and inventory search process altogether.

The Court finds that even if Detective Shaw failed to comply with the requirements of § 10.31.030, Ms. Gonzalez's purse would have been subject to an inventory search had she been booked on charges resisting arrest. *Peterson*, 902 F.3d at 1020. Detective Shaw testified that, based on the fact that he developed probable cause to arrest Ms. Gonzalez for four additional felony charges related to the contraband and drugs found inside of her purse, he decided not to cite her for resisting arrest. However, had he not searched the purse incident to Ms. Gonzalez's arrest and, therefore, not discovered the contraband and narcotics, he would have arrested Ms. Gonzalez for resisting arrest. If Detective Shaw would have arrested Ms. Gonzalez for resisting arrest, bail would not have been set on that charge at the time of her arrest. Under these circumstances, Ms. Gonzalez would have been booked and her purse inventoried at the Yakima Police Department Evidence and Property Unit. Thus, the evidence inside of Ms. Gonzalez's purse inevitably would have been discovered.

## CONCLUSION

The contraband and narcotics found inside of Ms. Gonzalez's purse were discovered pursuant to a valid search incident to arrest. And even if the search was not valid, the evidence would have been discovered inevitably pursuant to an

ORDER RE: PRETRIAL MOTIONS ^ 16

inventory search. Thus, Ms. Gonzalez's Motion to Suppress Evidence, ECF No. 92, is **denied**.

**IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 91, is **DENIED**.
2. Defendant's Motion to Suppress Evidence, ECF No. 92, is **DENIED**.
3. The Government's Second Motion to Extend Time to File Response, ECF No. 98, is **GRANTED**.
4. The Government's Motion to Expedite, ECF No. 99, is **DENIED as moot**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 22nd day of January 2019.

Stanley A. Bastian
United States District Judge

ORDER RE: PRETRIAL MOTIONS ^ 17